UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x

In re:                              :

P and P "QUICK SETT" SERVICES, INC.:    BK No. 10-14705
            Debtor                       Chapter 11

- - - - - - - - - - - - - - - - - -:

**ORDER DENYING MOTION TO APPROVE SETTLEMENT AGREEMENT, AND
SETTING ADVERSARY PROCEEDING DISCOVERY PLAN AND TRIAL DATE**

**FACTS AND TRAVEL**

Heard on an expedited basis, on March 17 and 23, 2011, the Debtor's Motion to Approve [a] Settlement Agreement with Prestige Capital Corporation ("Prestige"), pursuant to Bankruptcy Rule 9019(a).[1] After hearing the arguments, this matter was taken under advisement, and in response to the Debtor's "time of the essence" urgings, I ordered memoranda of law, limited to 15 pages, to be filed within 26 hours. At that time the Court was giving deference to the Debtor's assertions that the Motion deserved expedited treatment, to the exclusion of all other interests and issues, because of time and money pressures. In even limited hindsight, however, this Court is satisfied that the "emergency" was at best a borderline misuse of the judicial process.

Some background may help to place this litigation in perspective. The Debtor filed this Chapter 11 case on November 8,

---

[1] Just prior to the hearing, on March 22, 2011, the Debtor filed an Amended Motion to Approve the Settlement Agreement with Prestige. It is the Amended Motion which was litigated and which is the subject of this Order.

2010, and to keep the business running, entered into a factoring agreement with Prestige, which was approved, without opposition, on January 7, 2011. On December 6, 2010, the Debtor filed an Adversary Proceeding against C.W. Wright Construction Company, Inc. ("C.W. Wright") demanding $642,626 allegedly owed for work performed prepetition by the Debtor for C.W. Wright. On January 18, 2011, C.W. Wright filed its Answer to the Complaint (A.P. 10-1098), together with an Interpleader action regarding the same $642,626 that the Debtor was trying to recover (the "funds"). C.W. Wright acknowledges that the Debtor performed services for which it has not been paid, but has concerns as to the validity and/or priority of other claims to the same monies.[2] Third-Party Defendants, Roanoke Cement Company, LLC ("Roanoke"), Rock Hill Sand & Gravel, Inc., d/b/a Gudelsky Materials ("Gudelsky"), Prestige and the Debtor (P and P "Quick Sett" Services, Inc.), filed timely Answers to the Interpleader. On February 4, 2011, C.W. Wright filed a motion to deposit money, which was granted on March 17, 2011, and the funds were promptly deposited in the registry of the Court.

On March 11, 2011, the Debtor filed a motion seeking emergency approval of a settlement agreement (the "Agreement") with Prestige,

---

[2] C.W. Wright contends that under Virginia law the $642,626 may be subject to the unpaid claims of materialmen hired by the Debtor, and acknowledges that it, C.W. Wright, does not have a claim to the funds.

proposing to: (I) allow Prestige a prepetition claim of $679,357.97 (as of March 16, 2011), plus attorney's fees; (ii) support C.W. Wright's Motion to deposit funds into the Court's registry, as well as Prestige's agreement that $100,000 of the $642,626 be immediately released to the Debtor, provided the remainder of the fund is contemporaneously turned over to Prestige; and (iii) that Prestige shall not pay attorney fees from advances, and that all unpaid attorney's fees shall be added to Prestige's allowed prepetition secured claim. Creditors Roanoke and Gudelsky filed timely objections to the Motion, which was heard on March 17 and 23, 2011.

## **DISCUSSION**

Pursuant to Bankruptcy Rule 9019(a), "after notice and a hearing, the court *may* [emphasis added] approve a compromise or settlement." Bankruptcy Rule 9019(a). "Approval of the settlement lies within the sound discretion of the Bankruptcy Court." *In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455, 460 (Bankr. E.D. Pa. 1998). "The benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate." *In the Matter of Energy Cooperative, Inc.*, 886 F.2d 921, 927 (7th Cir. 1989).

Bankruptcy courts should consider the following factors when deciding whether a settlement is in the best interest of the estate: "(i) the probability of success in the litigation being

3

compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise." *Jeremiah v. Richardson*, 148 F.3d 17, 23 (1st Cir. 1998). "The court's consideration of these factors should demonstrate whether the compromise is fair and equitable, and whether the claim the debtor is giving up is outweighed by the advantage to the debtor's estate." *Id*. "Even if it is concluded that the settlement is above the lowest level of reasonableness, in our discretion we may still deny approval, if not in the best interest of the estate." *In re Hydronic Enterprise, Inc.*, 58 B.R. 363, 366 (Bankr. D.R.I. 1986).

The proponent of a settlement has the burden to establish that the proposal is in the best interest of the estate. *In re Nationwide Sports Distributors, Inc.*, 227 B.R. at 460. This Debtor has fallen far short of meeting any of its burdens. Instead, it argues unpersuasively that the Agreement is necessary because (I) the Debtor's need for the "bargained for" $100,000 is real and immediate; (ii) the Agreement will reduce the amount owed to the secured creditor Prestige, and that this, in turn, "will benefit all creditors"; and (iii) that the Debtor needs the infusion of the $100,000 in order to have "a rolling cash flow" to support

"anticipated operational costs" for the second and third quarters of the year.  The Debtor also indicates without explanation that it does not have reasonable grounds to dispute Prestige's alleged perfected security interest in the funds.[3]

The Debtor's argument fails to show how the Agreement benefits anyone other than the Debtor and Prestige.  None of the other potential stakeholders are parties to the Agreement, and as Gudelsky and Roanoke point out, there is presently an interpleader action pending (in A.P. No. 10-1098) which is specifically aimed at determining who is entitled to the disputed funds.  Additionally, the arguments of all of the parties support the Court's conclusion that the questions regarding ownership of the funds are complicated and varied, and should be decided *only* after discovery, in the context of an adversary proceeding, and only after all claimants to the funds have had the opportunity to be fully heard on the merits.  And certainly, not as a hastily entered into Agreement between the Debtor and Prestige, whose relationship needs to be thoroughly vetted.

The Agreement also has the earmarks of an attempted end run by the Debtor and Prestige around the Interpleader action, and the

---

[3] Objecting Creditors Roanoke and Gudelsky raise a plethora of issues as to why the Motion to Approve Settlement is in no way entitled to emergency or summary treatment.  Couple this with the filings and events that have taken place since this discreet issue was taken under advisement on March 28, 2011, and the request of the Debtor and Prestige to approve *their* "Settlement" on an expedited basis becomes even more problematic.

5

Court is mindful and suspicious of the timing of the motion. Prestige and the Debtor did not enter into the Agreement until after C.W. Wright had filed the third-party complaint, and after it (C.W. Wright) had filed the motion to deposit the funds with the Court.[4]  The Debtor completely overlooks its obligation to deal fairly with all creditors, and should not be allowed to concoct a deal with a hand picked favorite, whatever its presently unknown reasons are.  In short, the Debtor has offered the Court no basis upon which it could grant the relief requested.  The only reasonable and the only fair minded course is to deny this motion, and let the chips fall as they may in the Interpleader action.

Except for one argument that the Court feels is without merit,[5] I conclude that all of the other reasons argued by the objectors are well taken, and are adopted and incorporated herein by reference.  Accordingly, the Motion to Approve the Settlement Agreement is **DENIED**.

The Court also expects to enter a separate order in A.P. No. 10-1098 setting discovery deadlines and a trial date for the C.W. Wright Interpleader action, and because *all* of the parties have

---

[4]  Prestige filed a response to C.W. Wright's motion to deposit funds with the Court, indicating that it did not *per se* object, however in the same breath Prestige argued to have the funds immediately turned over to it, on the ground that it was a secured creditor.  Predictably, the Debtor agrees to this condition.

[5]  I.e., that the contract between the Debtor and Prestige is void because of Va. Code § 43-13 [Doc. 271], Pgs. 2-5.

been derelict in adhering to this Court's previously ordered deadlines and limitations, future violations will be strictly enforced and subject to sanctions.

Entered as an Order of this Court.

Dated at Providence, Rhode Island, this 19th day of April, 2011.

Arthur N. Votolato
U.S. Bankruptcy Court

Entered on docket: 4/19/11